CITY OF COUNCIL BLUFFS v. ILLINOIS CENTRAL RAILROAD COM-
PANY, DUBUQUE & SIOUX CITY RAILROAD COMPANY, Ap-
pellants.

Municipal corporations: ORDINANCES: REASONABLENESS. An or-
dinance requiring a railway company to construct and operate
gates at a certain street crossing during all hours was not invalid,
because imposing an unreasonable burden, even though for two
and one half hours out of the day no street cars were ordinarily
operated over the street, and no pedestrians traveled the street at
such time.

Same: RAILWAY CROSSINGS: GATE REGULATIONS: STATUTES: ORDI-
NANCES. An ordinance requiring gates at street crossings of steam
and interurban railways, in accordance with the statute authoriz-
ing cities to require gates upon the public streets at railroad cross-
ings, and the statutes making interurban railways street railways
within the city and subject to the same law, was not void because
inconsistent with other provisions of the statutes regulating the
method of crossing of steam and interurban electric railways; as
the the latter statutes relate to crossings outside the city limits.

Same: ORDINANCES: DISCRIMINATION. An ordinance requiring rail-
way companies to maintain gates at a street crossing, at the inter-
section of steam with an electric railway, was not objectionable
as discriminating in favor of natural persons and against corpo-
rations; as the ordinance applied to either a corporation or an
individual operating a railway at such crossings.

Same: MANDAMUS: DEFENSES. It is no defense to an action to com-
pel a railway company to erect and maintain crossing gates at the
intersection with a street railway, that the ordinance also required
the street railway to maintain gates at the same crossing, and
that it had not complied therewith.

Same: CONSTRUCTION OF ORDINANCE. An ordinance requiring gates for
the protection of the public at a street crossing, and at the inter-
section of a railroad with an electric line, was not objectionable
as requiring a watchman as distinguished from an operator of the
gates.

**Same:** ORDINANCES: TITLE. The ordinance in this case was not objectionable as embracing more than one subject, and distinct matters not covered by the title.

**Same:** MANDAMUS. Mandamus is the proper remedy to compel a railway company to comply with an ordinance requiring the construction and maintenance of gates at street intersections.

*Appeal from Pottawattamie District Court.*—HON. A. B. THORNELL, Judge.

TUESDAY, DECEMBER 10, 1912.

ACTION in mandamus to compel defendants to install and operate gates at a street intersection. Judgment for plaintiff. Defendants appeal.—*Affirmed.*

*Kelleher & O'Connor, Tinley & Mitchel,* and *Helsell & Helsell,* for appellants.

*C. F. Kimball* and *D. E. Stuart,* for appellee.

SHERWIN, J.—Avenue A, in the city of Council Bluffs, runs east and west, and Eighteenth street is a north and south street crossing Avenue A. The railway tracks of the appellants run north and south on Eighteenth street crossing Avenue A. The main line of the Omaha & Council Bluffs Street Railway between Council Bluffs and Omaha is a double-tracked road running on Avenue A, and crosses appellants' track at Eighteenth street. The appellants maintain switch tracks both north and south of Avenue A and near thereto. The street railway has a large passenger business between Council Bluffs and Omaha, and runs its cars over the crossing in question, in its ordinary operation, from 4:27 a. m. until 2 a. m., and at the time of the trial it was operating a nine-minute schedule with double service during rush hours in the morning and evening. In the regular service, aside from extras, there were about two hundred and

fifty-two cars crossing this intersection daily, and, in addition thereto, there were thirty-four extras morning and evening. There are no sidewalks on Avenue A at this point, nor is the avenue used to any extent by vehicles other than the street cars. Some distance west of this intersection there are many residences, and the record shows that there is considerable travel by foot along the street car tracks over and west of this intersection. But it may fairly be said that the purpose of the city in requiring the appellants to establish and operate gates at this point was to protect the great number of people who use the street cars crossing appellants' tracks. In December, 1907, the plaintiff city passed an ordinance, known as No. 376, which was entitled as follows: ''An ordinance to compel railroad companies to erect, construct, maintain and operate suitable gates upon certain public streets at railroad crossings and providing regulations therefor.''

I.   On the 10th day of February, 1908, the city passed an ordinance that was entitled as follows: ''An ordinance amending an Ordinance No. 376, to compel railroad companies to erect, construct, maintain and operate suitable gates upon certain public streets at railroad crossings and providing regulations therefor, and repealing ordinances in conflict therewith.'' This last ordinance required railroad companies owning or operating tracks ''at the intersection of Avenue A on 18th street points to at once erect, construct and maintain, without expense to the city, on both sides of such tracks and right of way where the same cross and intersect said streets, suitable gates operated by hand, or other power, to protect and warn the traveling public by closing same during the passage of trains or when the cars, engines or trains are about to pass upon and over said streets, and crossings.'' This ordinance provided that it should be in force and effect from and after its passage, approval, and publication, and it also required a copy of the same to be served upon each of the companies owning or operating the said railways crossing said streets. This ordinance repealed Ordi-

nance No. 376. It was approved February 14, 1908, and was duly published, and a copy thereof served on both of the defendants herein on the 2d day of March, 1908. The defendants have consistently refused to comply with this ordinance. The first of the appellants' contentions meriting our attention is their claim that the ordinance is unreasonable and void, because appellants are required to operate the gates at all hours of the day and every day in the year. The only basis for this claim is the fact appearing in the record that ordinarily street cars are not operated over this crossing between the hours of 2 a. m. and 4.27 a. m., a matter of about two and a half hours in the early morning. It may also be presumed that ordinarily the public will not use this street for a footway between the hours mentioned, but the fact remains that exigencies may require the use of the street cars during the time in question, and that the street may be used at all hours of the night by foot travelers. An ordinance will not be held void because unreasonable, unless it clearly appears that it imposes an unreasonable burden as a whole. While it may be that public interests would be fairly well subserved without the service during the two and one-half hours in controversy, we cannot say that the city has so abused its discretionary power in the matter as to require us to interfere by declaring the ordinances void for unreasonableness. The authorities relied on by appellants are not controlling, because the facts upon which they are based are not similar to the facts here.

II. Appellants further contend that the ordinance is void because inconsistent with the state statute regulating the method of crossing at intersections of steam and interurban electric railways. It is very doubtful whether this line of street railway, extending only from Council Bluffs to Omaha, Neb., and exclusively within the corporate limits of both cities, is an interurban railway within the meaning of Code Supplement, sections 2033a, 2033b. But, however that may be, we are confident that there is no conflict between the ordi-

nance and the state statute, because of the express power given to cities of this class by section 769 of the Code, and because of section 2033-c, Code Supplement. Section 769 expressly authorizes cities of this class to compel railroad companies to erect and maintain gates upon public streets at railroad crossings, and section 2033-c provides as follows: "Any interurban railway shall within the corporate limits of any city or town, or of any city acting under a special charter, upon such streets as it shall use for transporting passengers, mail, baggage, and such parcels, packages, and freight as it may carry in its passenger or combination baggage cars only be deemed a street railway, and be subject to the laws governing street railways." The state statute was evidently intended to regulate crossings outside of cities, and not to interfere with the authority of cities within their limits, and such construction gives force and effect to all of the statutes on the subject, while no other construction would do so. Furthermore, it is not solely a question of the crossing of two railroads. The matter of a public street is involved, and, to some extent at least, the protection of the public not using the street railway.

III. The appellants' claim that the ordinance is void because it discriminates in favor of natural persons and against corporations is hypercritical in the extreme. There is not a shadow of merit in the position so far as this case is concerned, because the ordinance requires the establishment of a gate at this particular point, and this would compel either a corporation or an individual operating a railroad over the crossing to maintain such gates.

IV. It is said that the language of the ordinance requires gates to be maintained by the interurban railway equally with the steam railroad at the same intersection. If it be conceded for the purpose of argument that the street railway is properly an interurban road, the appellants need not be concerned with the requirements of the ordinance beyond its own affairs. If it was the intention of the city

to have both streets guarded by gates, it can attend to the matter itself.

V. The ordinance does not require a watchman, as distinguished from an operator of the gates, and is clearly within the power of the city.

VI. It is further contended that the ordinance is void because "it embraces more than one subject and distinct matters not covered by the title." There is nothing in the point. An examination of the title thereto, in connection with the tile to Ordinance No. 376, leaves no room for doubt on this subject, and everything enacted in the ordinance is distinctly referred to in the title. The ordinance in question was in form in accordance with section 681 of the Code, which provides that "no ordinance or section thereof shall be revised or amended unless the new ordinance contain the entire ordinance or section revised or amended, and the former ordinance or section shall be repealed."

VII. Mandamus is the proper remedy here. *Swinney v. C., R. & P. Ry. Co.*, 123 Iowa, 219.

One or two other complaints are made by appellants, but they are not of sufficient moment to require specific mention.

The judgment is *Affirmed.*